# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **JANICE B. BARRETT,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:04cv00124 |
| | ) | **MEMORANDUM OPINION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

## I. Background and Standard of Review

Plaintiff, Janice B. Barrett, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Barrett filed her application for DIB[1] on or about November 11, 2002, alleging disability as of May 26, 2001, based on arthritis, bone deterioration, blindness in the left eye, diabetes, depression, hypertension, migraine headaches and blurred vision. (Record, ("R."), at 55-57, 63, 104.) The claim was denied initially and upon reconsideration. (R. at 41-43, 47-50.) Barrett then requested a hearing before an administrative law judge, ("ALJ"). (R. at 51.) The ALJ held a hearing on October 23, 2003, at which Barrett was represented. (R. at 254-82.)

By decision dated November 17, 2003, the ALJ denied Barrett's claim. (R. at 16-22.) The ALJ found that Barrett met the disability insured status requirements of the Act for disability purposes through the date of the decision. (R. at 21.) The ALJ found that Barrett had not engaged in substantial gainful activity since May 26, 2001. (R. at 21.) The ALJ also found that the medical evidence established that Barrett suffered from severe impairments, namely a mental impairment, vision impairment and musculoskeletal impairment, but he found that Barrett did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R.

---

[1] The record indicates that Barrett filed previous supplemental security income, ("SSI"), and DIB applications on November 30, 2000. (R. at 17.) These claims were denied and a hearing was held on August 22, 2001. (R. at 17.) On October 25, 2001, an ALJ rendered an unfavorable decision, which was appealed. (R. at 17, 32-38.) The Appeals Council denied Barrett's appeal, and the case was not further pursued. (R. at 17.) Therefore, disability is being considered as of October 26, 2001, one day after the ALJ's October 25, 2001, decision.

-2-

Part 404, Subpart P, Appendix 1. (R. at 21.) The ALJ found that Barrett's allegations were not totally credible. (R. at 21.) The ALJ found that Barrett retained the residual functional capacity to perform simple, unskilled light work[2] that did not require good bilateral vision. (R. at 21.) Thus, the ALJ found that Barrett could not perform any of her past relevant work. (R. at 21.) Based on Barrett's age, education and work history and the testimony of a vocational expert, the ALJ concluded that Barrett could perform jobs existing in significant numbers in the national economy, including those of a parking lot attendant, a gate guard, a receptionist and a counter clerk. (R. at 21.) Thus, the ALJ found that Barrett was not disabled under the Act and was not eligible for DIB benefits. (R. at 21-22.) *See* 20 C.F.R. § 404.1520(g) (2005).

After the ALJ issued his decision, Barrett pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 5-9.) Barrett then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2005). The case is before this court on Barrett's motion for summary judgment filed April 1, 2005, and the Commissioner's motion for summary judgment filed May 4, 2005.

## *II. Facts*

Barrett was born in 1959, (R. at 55), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). She has a high school education and past work experience as a manager, an assistant manager and an inspector. (R. at 69, 257-61.)

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2005).

Barrett testified that she was a diabetic, and as a result, she was blind in her left eye and experienced blurred vision in her right eye. (R. at 265-66.) She stated that her blood sugar was "doing well." (R. at 267.) She stated that she could stand for 45 minutes without interruption and could sit for up to one hour without interruption. (R. at 271.) She stated that she could lift and carry items weighing up to 10 pounds. (R. at 271.)

Cathy Sanders, a vocational expert, also was present and testified at Barrett's hearing. (R. at 279-80.) Sanders was asked to assume a hypothetical individual of Barrett's age, education and work history, who could perform simple, unskilled light work, but who could not perform work that required bilateral vision. (R. at 279.) Sanders testified that such an individual could perform the jobs of a parking lot attendant, a gate guard, a receptionist and a counter clerk, jobs that existed in significant numbers in the national economy. (R. at 279.) Sanders was asked if there were jobs available that a person could perform if she was limited as indicated in the assessment of Robert C. Miller, Ed.D., a licensed clinical psychologist. (R. at 243-47, 280.) She stated that there were no jobs available that such an individual could perform. (R. at 280.)

In rendering his decision, the ALJ reviewed records from Dr. Andrew S. Rhinehart, M.D.; Smyth County Community Hospital; Johnston Memorial Hospital; Dr. David A. Wiles, M.D.; Dr. Joseph R. Morris, O.D.; Dr. Robert O. McGuffin, M.D., a state agency physician; Eugenie Hamilton, Ph.D., a state agency psychologist; Mount Rogers Mental Health Center; and Robert C. Miller, Ed.D., a licensed clinical psychologist.

The record shows that Barrett sought treatment from Dr. Andrew S. Rhinehart, M.D., from December 8, 2000, through September 15, 2003, for various complaints, including depression, hypertension, anxiety and back pain. (R. at 122-39, 214-33.) In December 2000, Dr. Rhinehart reported that Barrett's hypertension and diabetes were under good control. (R. at 130.) In June 2001, Barrett complained that her depression was worse, but she was not taking her medication. (R. at 127.) In July 2001, she reported that her symptoms of depression were definitely doing better. (R. at 126.) In October 2001, Barrett again reported that she was doing well with her symptoms of depression and that her anxiety was okay. (R. at 125.) In June 2002, Barrett reported that her symptoms of anxiety and depression were doing fairly well. (R. at 123.) In July 2002, an MRI of Barrett's lumbar spine showed degenerative disc disease at the L4-L5 level, a broad based bulge in the left midline and a small herniation extending to the left midline with some encroachment of the neural foramina. (R. at 137.) X-rays of Barrett's lumbar spine showed mild intervertebral disc space narrowing at the L4-L5 level. (R. at 138.)

On October 6, 2003, Dr. Rhinehart completed an assessment indicating that Barrett could occasionally lift and carry items weighing up to 10 pounds and that she could frequently lift and carry items weighing up to 10 pounds. (R. at 230-31.) He indicated that she could stand and walk for up to three hours in an eight-hour workday and that she could do so for one hour without interruption. (R. at 230.) Dr. Rhinehart reported that Barrett could sit for up to four hours in an eight-hour workday and that she could do so for one hour without interruption. (R. at 230.) He reported that Barrett should never climb, stoop, kneel, balance, crouch or crawl. (R. at 231.) He found that her ability to push and pull was impaired. (R. at 231.) Dr. Rhinehart further restricted her from working around heights, moving machinery and temperature extremes. (R.

at 231.)

Dr. Rhinehart also completed a mental assessment indicating that Barrett was unlimited in her ability to follow work rules, to relate to co-workers, to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 232-33.) He reported that Barrett was limited, but satisfactory, in her ability to use judgment, to interact with supervisors, to function independently and to understand, remember and carry detailed instructions. (R. at 232-33.) He found that she was seriously limited, but not precluded, in her ability to deal with the public, to deal with work stress, to understand, remember and carry out complex instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 232-33.) Dr. Rhinehart further found that Barrett had no useful ability to maintain attention/concentration. (R. at 232.)

Barrett sought treatment from Mount Rogers Mental Health Center for complaints of depression from May 16, 2001, through August 2, 2001. (R. at 234-37.) In May 2001, it was reported that Barrett's mood was depressed. (R. at 237.) She had a Global Assessment of Functioning, ("GAF"), score of 70.[3] (R. at 237.) In June 2001, it was reported that Barrett's mood and affect were appropriate, and she was assessed a GAF score of 65. (R. at 235.) In August 2001, Barrett's GAF score was again assessed at 70. (R. at 234.) It was reported that she had a bright affect and her

---

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 61-70 indicates that the individual has "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but [is] generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

-6-

mood appeared better. (R. at 234.)

On August 3, 2001, Dr. Joseph R. Morris, O.D., examined Barrett's eyes. (R. at 140-41.) He diagnosed amblyopia in the left eye.[4] (R. at 141.) He noted that Barrett's retinas and optic nerves were healthy and normal. (R. at 141.) Barrett's intraocular pressure also was normal. (R. at 141.)

Barrett was seen at the emergency room at Smyth County Community Hospital on June 7, 2002, and July 25, 2002, for complaints of back pain. (R. at 155-58.) In June 2002, it was reported that she had no tenderness in the back area and she had excellent reflexes and strength in both legs. (R. at 157.) She was diagnosed with mechanical low back pain. (R. at 157.) In July 2002, Barrett had tenderness and muscle spasm in the lumbar region. (R. at 155.) Straight leg raising tests were negative on the right and positive on the left. (R. at 155.) Reflexes and neurological examination were normal. (R. at 155.) She was diagnosed with back pain with radiculopathy, probably a herniated disc. (R. at 155.)

Barrett was seen at the emergency room at Johnston Memorial Hospital on August 12, 2002, and February 23, 2003, for complaints of low back pain. (R. at 159-63, 238-42.) In February 2003, Barrett reported that she had "ongoing back problems" and that she had been doing okay until a recent fall. (R. at 238.) X-rays of her lumbar spine showed slight degenerative disc space narrowing at the L4-L5 level. (R. at 242.) She was diagnosed with back pain. (R. at 238.)

---

[4] Amblyopia refers to an impairment of vision without detectable organic lesion of the eye. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 56 (27th ed. 1988.)

-7-

On August 22, 2002, Barrett saw Dr. David A. Wiles, M.D., for complaints of low back and left leg pain. (R. at 166-67.) Examination of Barrett's back showed some tenderness. (R. at 166.) Straight leg raising tests were negative, and she had normal strength. (R. at 166.) Dr. Wiles diagnosed increased mechanical discogenic low back pain with some mild left L5 radicular features. (R. at 166.) Dr. Wiles indicated on February 27, 2003, that although he had prescribed physical therapy for Barrett, she failed to participate. (R. at 165.) He reported that Barrett underwent a facet block, which helped significantly until two weeks prior when Barrett slipped and fell on ice. (R. at 165, 170.) Barrett reported that her back and leg discomfort was getting better. (R. at 165.)

On April 24, 2003, Dr. Robert O. McGuffin, M.D., a state agency physician, indicated that Barrett had the residual functional capacity to perform medium[5] work. (R. at 171-78.) He indicated that Barrett could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 173.) He imposed no manipulative, communicative or environmental limitations. (R. at 174-75.) Dr. McGuffin found that Barrett was visually limited in her left eye. (R. at 174.) However, he found that she could see well enough to perform ordinary activities. (R. at 174.) This assessment was affirmed on May 29, 2003, by Dr. Richard M. Surrusco, M.D., another state agency physician. (R. at 178.)

On April 28, 2003, Eugenie Hamilton, Ph.D., a state agency psychologist, indicated that Barrett suffered from a nonsevere affective disorder and anxiety-related

---

[5]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2005).

disorder. (R. at 180-93.) She found no restriction on Barrett's activities of daily living. (R. at 190.) Hamilton found that Barrett had a mild limitation in her ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 190.) Hamilton found that Barrett had experienced no episodes of decompensation. (R. at 190.) Hamilton reported that Barrett's allegations were partially credible, but there was no evidence of a severe impairment. (R. at 192.) This assessment was affirmed by Hugh Tenison, Ph.D., another state agency psychologist, on May 30, 2003. (R. at 180.)

On September 17, 2003, Robert C. Miller, Ed.D., a licensed clinical psychologist, evaluated Barrett at the request of Barrett's attorney. (R. at 243-47.) Miller reported that Barrett's mood was depressed and sad. (R. at 244.) The Wechsler Adult Intelligence Scale-III, ("WAIS-III"), test was administered, and Barrett obtained a verbal IQ score of 84, a performance IQ score of 78 and a full-scale IQ score of 79. (R. at 246, 250.) Miller diagnosed major depressive disorder, moderate and generalized anxiety disorder. (R. at 247.) He assessed Barrett's GAF score at 45.[6] (R. at 247.)

Miller completed a mental assessment indicating that Barrett was limited, but satisfactory, in her ability to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 248-49.) He indicated that Barrett was seriously limited, but not precluded, in her ability to use judgment, to function independently and to understand, remember and carry out detailed instructions. (R. at 248-49.) Miller reported that Barrett had no useful ability to follow work rules, to

---

[6] A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-9-

relate to co-workers, to deal with the public, to interact with supervisors, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex instructions, to behave in an emotionally stable manner, to relate predictably in social situations and and to demonstrate reliability. (R. at 248-49.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated November 17, 2003, the ALJ denied Barrett's claim. (R. at 16-22.) The ALJ found that the medical evidence established that Barrett suffered from severe impairments, namely a mental impairment, vision impairment and musculoskeletal impairment, but he found that Barrett did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)The ALJ found that Barrett retained the residual functional capacity to perform simple, unskilled light work that did not require good bilateral vision. (R. at 21.) Thus, the ALJ found that Barrett could not perform any of her past relevant work. (R. at 21.) Based on Barrett's age, education and work history and the testimony of a vocational expert, the ALJ concluded that Barrett could perform jobs existing in significant numbers in the national economy, including those of a parking lot attendant, a gate guard, a receptionist and a counter clerk. (R. at 21.) Thus, the ALJ found that Barrett was not disabled under the Act and was not eligible for DIB benefits. (R. at 21-22.) *See* 20 C.F.R. § 404.1520(g) (2005).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical

evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Barrett argues that the ALJ erred by failing to give controlling weight to the opinions of Dr. Rhinehart, her treating physician, and psychologist Miller. (Motion For Summary Judgment And Memorandum Of Law On Behalf Of The Plaintiff, ("Plaintiff's Brief"), at 6-9.) Barrett also argues that the ALJ erred by finding that there is other work in the national economy that she could perform. (Plaintiff's Brief at 9-11.)

Barrett argues that the ALJ erred by failing to give controlling weight to the opinions of Dr. Rhinehart and psychologist Miller. (Plaintiff's Brief at 6-9.) According to 20 C.F.R. § 404.1527(d), the ALJ must give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. The ALJ gave little weight to the disability assessments of Dr. Rhinehart because they were conclusory. (R. at 18.) In particular, the ALJ correctly noted that Dr. Rhinehart's findings that Barrett suffered from disabling back pain and disabling depression are not supported by the objective evidence of record. (R. at 18.) The objective medical evidence does not support a finding of disabling back pain. Dr.

-12-

Rhinehart's notes make no mention of any objective findings to support Barrett's claims of severe disabling back pain. In fact, Dr. Rhinehart's notes make no mention of back pain until June 14, 2002. (R. at 123.) Nonetheless, the note of this date does not document any pain upon palpation, any muscle spasms or any restricted range of motion. (R. at 123.) In July 2002, an MRI of Barrett's lumbar spine showed degenerative disc disease at the L4-L5 level, a broad based bulge in the left midline and a small herniation. (R. at 137.) X-rays of Barrett's lumbar spine showed mild intervertebral disc space narrowing at the L4-L5 level. (R. at 137-38.) In August 2002, Dr. Wiles reported that Barrett's straight leg raising tests were negative and she had normal strength. (R. at 166.) In February 2003, an x-ray of Barrett's lumbar spine showed slight degenerative disc space narrowing at the L4-L5 level. (R. at 242.)

Furthermore, the medical evidence supports the ALJ's finding with regard to Barrett's mental residual functional capacity. The record shows that Barrett sought treatment from Mount Rogers Mental Health Center from May 2001 to August 2001 for complaints of depression. (R. at 234-37.) During that time, it was reported that Barrett's mood and affect were appropriate, and she was assessed a GAF score of 65 and 70. (R. at 234-37.) In fact, Barrett reported on numerous occasions that her symptoms of depression and anxiety improved with medication. (R. at 123, 125-26.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Based on my review of the evidence, I find that substantial evidence supports the ALJ's decision not to give controlling weight to the assessments of Dr. Rhinehart and psychologist Miller. I also find that substantial evidence exists in the record to support the ALJ's finding as to Barrett's physical and mental residual functional capacity.

*IV. Conclusion*

For the foregoing reasons, Barrett's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision to deny benefits will be affirmed.

An appropriate order will be entered.

DATED: This 23rd day of August, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE